Filed 11/20/15  P. v. Merritt CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062540 |
| v. | (Super.Ct.No. FVI1300082) |
| ANDRE MERRITT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Reversed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Andre Merritt guilty of two counts of robbery. (Pen. Code, § 211.)[1] The jury found true the allegations that defendant personally used a firearm during both robberies. (§ 12022.53, subd. (b).) The trial court sentenced defendant to prison for a term of 19 years 4 months. Defendant raises two issues on appeal. First, defendant contends the trial court erred by failing to instruct the jury on the crime of robbery—the whole instruction was omitted. (CALCRIM No. 1600.) Second, defendant asserts that, because he relied upon an alibi defense, the trial court erred by instructing the jury that the prosecutor need not prove the crime occurred on a specific date. (CALCRIM No. 207.) We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.    DEFENDANT'S OFFENSES

      1.    *STORAGE FACILITY*

On December 19, 2012, at approximately 5:00 p.m., Kristen Wickum was working at the front counter of Storage Direct, in Victorville. Defendant approached the front counter. Defendant pulled out a gun and demanded "all the money." Wickum gave defendant the money "[i]n the drawer" and the petty cash box. All together, defendant took approximately $338. After defendant left, Wickum called for her manager, who was in a back room with the door closed. Wickum and the manager contacted law enforcement.

---

[1] All subsequent statutory references will be to the Penal Code, unless otherwise indicated.

Defendant's face was not covered during the robbery. Wickum described the assailant as a black male; approximately 20 years old; 5 feet 11 inches tall; wearing a blue hooded sweatshirt, gray shorts, white socks, and Chuck Taylor shoes. Wickum recalled the handgun being a black semiautomatic. When shown a six-pack photographic lineup, Wickum "almost immediately" identified defendant.

### 2. *CONVENIENCE STORE*

On December 19, 2012, at approximately 6:22 p.m., Christian Lopez was working at La Mexicana, a convenience store in Victorville. Defendant pointed a gun at Lopez and said, "Give me the money . . . [¶] . . . [¶] Muthafucker." Lopez gave defendant the money from the cash register and from a separate "stash." Defendant took approximately $700.

Defendant's face was not covered during the robbery. Lopez described the assailant as "a black male in his 20s, about [six] foot with a thin, bulky build, wearing a black shirt, khaki shorts, and he was armed with a silver handgun." When shown a photographic lineup, Lopez identified defendant "Right away." The robbery was recorded by the store's surveillance system. The video recording was played for the jury.

3. *SEARCH*

On January 4, 2013, a San Bernardino County Sheriff's Department detective and deputies searched defendant's residence in Victorville. In defendant's bedroom, the law enforcement officers found ammunition. In a girl's bedroom, where defendant stored some of his clothes, the officers found cargo-style men's shorts, two hooded black sweatshirts, and Converse or Chuck Taylor-type shoes.

4. *DEFENSE*

Defendant presented an alibi defense. On the night of December 18, 2012, defendant's mother picked defendant up at the jail in Adelanto. Waiting at her home to celebrate defendant's release, were defendant's brother, defendant's cousin, and two other men. When defendant arrived at the house, the men smoked marijuana and played videogames. The celebration lasted "two or three days." Defendant was at the house, using the computer, on December 19 from 4:30 to 6:30 p.m. Defendant did not leave the house for approximately four days after being released from jail.

5. *REBUTTAL*

The prosecutor presented a rebuttal witness. San Bernardino County Sheriff's Detective Solorio was present when defendant was interviewed following the execution of the search warrant. During the interview, defendant said he was at home "earlier in the day" on December 19, but then walked to a friend's residence at the Rodeo Apartments. Defendant said he spent the night of December 19 at the Rodeo Apartments.

B.     JURY INSTRUCTIONS

Defendant was charged with two counts of robbery.  (§ 211.)  The trial court did not instruct the jury on the offense of robbery.  (CALCRIM No. 1600.)  The elements listed in the robbery jury instruction, which were omitted, were:  (1) defendant took property that was not his own; (2) the property was in the possession of another person; (3) the property was taken from the other person or his/her immediate presence; (4) the property was taken against that person's will; (5) the defendant used force or fear to take the property or to prevent the person from resisting; and (6) when the defendant used force or fear to take the property, he intended to permanently deprive the owner of the property.  The instruction went on to provide further information about the offense.  (CALCRIM No. 1600.)

The trial court instructed the jury on the specific intent requirement for robbery.  The instruction informed the jury, "The specific intent and mental state required for the crime of Robbery is the specific intent to permanently deprive the owner of the property when it is taken."  (CALCRIM No. 251.)  The trial court also instructed the jury on the firearm enhancement (§ 12022.53, subd. (b)), which requires proof the defendant (1) displayed the weapon in a menacing manner; (2) hit someone with the weapon; or (3) fired the weapon.  (CALCRIM No. 3146.)

During the prosecutor's closing argument, he said, "The instructions are that the defendant took property that was not his own.  That the property was in the possession of another person.  Property was taken from the other person or immediate presence.  Property was taken against that person's will.  The defendant used force or fear to take

5

the property or prevent the person from resisting.  And, finally, when the defendant used force or fear to take the property intended to deprive the owner of it permanently.  You'll see the instruction in the instructions also that the employee owns the property of the business.  So you have all this."

During defense counsel's closing argument, he said, "Now, [the prosecutor] already went through the elements of robbery.  Number 1, the defendant took property that was not his own.  Two, the property was in the possession of another person.  Three, the property was taken from the other person or her immediate presence.  The property was taken against that person's will and the defendant used force or fear to take the property or to prevent the person from resisting.  And when the defendant used force or fear to take the property he intended to deprive the owner of it permanently.  That's [legalese] for, he intended to steal it."

Defense counsel continued, explaining his argument, "Now, there is no question here, as [the prosecutor] said, no question these people were robbed, okay.  Our only contention is with Element Number 1 that it was not the defendant.  Not the defendant."

**DISCUSSION**

A.     ROBBERY INSTRUCTION

Defendant contends the trial court erred by not instructing the jury on the offense of robbery, and that the error is reversible per se.  (CALCRIM No. 1600.)  The People concede the trial court erred, but assert the error was harmless.  The People assert the error is harmless because (1) the jury was instructed on the specific intent requirement for robbery; (2) the jury was instructed on the use of a firearm, which relates to the force

6

and fear element of robbery; (3) defendant only disputed identity—he did not dispute that the robberies occurred; and (4) both trial attorneys recited the elements of robbery in their closing arguments.

We apply the de novo standard when reviewing an alleged instructional error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 (*Cummings*).) Because the trial court did not instruct on the charged offense, we conclude the trial court erred.

We now examine whether the error is reversible per se or subject to harmless error review. In *Cummings*, the defendant was convicted of robbery, attempted robbery, and conspiracy to commit robbery, but the trial court failed to instruct the jury on the offense of robbery. (*Cummings*, *supra*, 4 Cal.4th at pp. 1256, 1311.) However, the trial court did instruct the jury that the crime of attempted robbery requires the specific intent to permanently deprive the owner of his/her property. (*Id.* at pp. 1311-1312.) The defendant argued that the trial court's failure to instruct on four of the five elements of robbery was reversible per se. (*Id.* at p. 1312.) The People argued the error was harmless because (1) the evidence established the robberies were committed at gunpoint; (2) the jury was instructed on the intent to permanently deprive; and (3) the defendant only disputed identity—he did not dispute that the robberies occurred. (*Ibid.*)

The Supreme Court discussed cases that permit a harmless error analysis to be performed when one element or a portion of an element was omitted from a jury

7

instruction. (*Cummings*, *supra*, 4 Cal.4th at pp. 1313-1314.) The Supreme Court then wrote, "These decisions make a clear distinction between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element. Moreover, none suggests that a harmless error analysis may be applied to instructional error which withdraws from jury consideration substantially all of the elements of an offense and did not require by other instructions that the jury find the existence of the facts necessary to a conclusion that the omitted element had been proved." (*Id.* at p. 1315.) The Supreme Court then concluded the defendant's convictions "must be reversed," "regardless of the merits of the People's argument that [the defendant] did not dispute the existence of the predicate facts and that the evidence overwhelmingly established all of the elements of robbery, attempted robbery, and conspiracy to commit robbery." (*Ibid.*)

Thus, *Cummings* establishes that a harmless error analysis may not be applied to an instructional error that withdraws from the jury's consideration substantially all of the elements of an offense, unless, through other instructions, the jury found the facts necessary to support a conclusion that the omitted elements were proven. (*Cummings*, *supra*, 4 Cal.4th at p. 1315.)

*Cummings* is directly on-point with the instant case. In both cases, (1) the complete robbery instruction was omitted; (2) the juries were instructed that the specific intent requirement for robbery meant establishing the defendant acted with the intent to permanently deprive; (3) the evidence established the robberies were committed at gunpoint; and (4) the defendants only disputed identity—they did not dispute that the

8

robberies occurred. In the instant case, the jury was also informed of the elements of robbery via the trial attorneys' closing arguments.

Similar to *Cummings*, the instant case did not include instructions that overlapped with all or most of the elements of robbery. For example, a finding that defendant had the specific intent to permanently deprive does not compel a conclusion that the jury found the facts necessary to establish the property was taken from the victims or the victims' immediate presence. (See *Cummings*, *supra*, 4 Cal.4th at p. 1313 ["A finding that property was taken with the intent to permanently deprive the owner does not compel a conclusion that the jury has found the facts necessary to establish the remaining elements of the offense"].) Because the instant case is so closely on-point with *Cummings*, we conclude, as our Supreme Court did in *Cummings*, that the error is reversible per se. (*Id*. at p. 1315.)

B.     DATE INSTRUCTION

Defendant contends, because he was relying on an alibi defense, the trial court erred by instructing the jury that the prosecutor was not required to establish the crimes occurred on a specific date. (CALCRIM No. 207.) Defendant urges this court to decide the issue, even if the convictions are reversed for the failure to instruct on robbery, in order to provide guidance to the trial court upon retrial.

The issue has been rendered moot by our conclusion that defendant's robbery convictions must be reversed. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1280 [issue is moot when no effective relief can be granted].) We decline the invitation

9

to provide guidance on the issue.  (See *People v. McMillan* (1980) 110 Cal.App.3d 682, 687 [declining to provide additional guidance to the trial court].)

## DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                                              J.

We concur:

McKINSTER _____
         Acting P. J.

KING _____
         J.